IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case Number:

WASTE CONNECTIONS OF COLORADO, INC., a Delaware corporation,

    Plaintiff,

v.

U. S. WASTE INDUSTRIES, INC., a Colorado corporation,
VICTOR DIVELLO, an individual, and
DOMINICK DIVELLO, an individual,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Waste Connections of Colorado, Inc., by and through its undersigned attorneys, states its Complaint as follows:

### I.  PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Waste Connections of Colorado, Inc. ("Waste Connections") is a Delaware Corporation with its principal executive offices located at 2295 Iron Point Road, Suite 200, Folsom, California 95630.

2.    Defendant U. S. Waste Industries, Inc. ("U. S. Waste") is a Colorado company with its principal executive offices located at 7770 Palmer Park Blvd., Colorado Springs, Colorado 80915.

3.    Defendant Victor DiVello is an individual who, upon information and belief, is a resident of Colorado Springs in the state of Colorado.

4.      Defendant Dominick DiVello is an individual who, upon information and belief, is a resident of Colorado Springs in the state of Colorado (all Defendants, "Defendants").

5.      This Court has subject matter jurisdiction via diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of parties, as the parties are residents of or are incorporated in different states, and the amount in controversy exceeds U.S. $75,000 exclusive of interest and costs.

6.      General personal jurisdiction exists over U. S. Waste because its principal executive office is located in Colorado Springs, Colorado.

7.      General personal jurisdiction exists over Victor DiVello as a resident of the State of Colorado.

8.      General personal jurisdiction exists over Dominick DiVello as a resident of the State of Colorado.

9.      Specific jurisdiction also exists over U. S. Waste because it was knowingly complicit in, or directly participated in, the alleged activities in the State of Colorado and this judicial district.

10.     The Court also has specific personal jurisdiction over Victor DiVello because the activities alleged herein occurred in Colorado and this judicial district.

11.     The Court also has specific personal jurisdiction over Dominick DiVello because the activities alleged herein occurred in Colorado and this judicial district.

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendants committed the alleged unlawful acts in this district.

## II.   FACTUAL BACKGROUND

### A.   The Acquisition.

13.   Waste Connections is an integrated solid waste services company that provides solid waste collection, transfer, disposal and recycling services in mostly secondary markets in the Western and Southern United States.  The company serves more than two million residential, commercial and industrial customers from a network of operations in 26 states.

14.   In 2007 Waste Connections was looking to expand its operations in Colorado.

15.   Thereafter, Waste Connections contacted U.S. Waste, a company based in Colorado Springs, Colorado engaged in the collection, transport and disposal of sold waste and recyclables in cities in southern Colorado.

16.   U.S. Waste also wholly owned a landfill owning company, BroadAcre Landfill, Inc., ("BroadAcre") owned in whole by shareholders Defendant brothers Victor and Dominick DiVello.  BroadAcre owned BroadAcre Landfill located in Pueblo County Colorado and Fountain Solid Waste Landfill located in El Paso County Colorado.

17.   After an initial investigation, the Parties believed that an acquisition would benefit everyone.

18.   Through extensive negotiations, Waste Connections agreed to acquire all U.S. Waste's assets and properties, including all Real Property owned by the company and all BroadAcre stock and property.

19.   The purchase price for the acquisition was agreed to at seventy five million U.S. dollars (US$75,000,000).

**B.     The Contract.**

20.     To consummate the transaction, the Parties negotiated and entered into a complex

Purchase Agreement.

21.     The Purchase Agreement, over 50 pages in length, (Attached hereto as Exhibit A)

accounted for all the material terms of the acquisition and the intricate details for a transaction of

this size and substance.  All Parties used sophisticated legal counsel in the drafting of the

Purchase Agreement and various drafts of the Purchase Agreement were sent back and forth

amongst the Parties and between counsel.

22.     On August 7, 2007, final agreement was reached and the Purchase Agreement

was signed and executed, consummating the transaction.

23.     On August 30, 2007, a First Amendment to Purchase Agreement was signed and

executed that modified some terms of the original Purchase Agreement.  The First Amendment to

Purchase Agreement included a paragraph "12" titled "Effect" that specifically provided the effect

the First Amendment had on the original Purchase Agreement: "Except as expressly modified by

this Amendment, the Agreement shall remain unchanged and in full force and effect."

**C.     Taxes.**

24.     As with any transaction of this size, significant taxes, recording fees, and transfer

fees would arise in connection with the transactions as described by the Purchase Agreement.

25.     To plan for such contingency, the Purchase Agreement specifically delineated the

respective responsibilities of the Parties with respect to who bore the taxes and fees burden:

SECTION 12.7 Payment of Fees and Expenses

> Whether or not the transactions herein contemplated shall be
> consummated, each party hereto will pay its own fees, expenses

and disbursements incurred in connection herewith and all other costs and expenses incurred in the performance and compliance with all conditions to be performed hereunder.  All sales and use taxes, escrow and recording fees, and transfer fees and taxes incurred in connection with the transactions contemplated by this Agreement shall be borne by the Sellers and paid at Closing. Acquirer shall not be responsible for any business, occupation, withholding, possessory interest or similar tax or assessment or any other tax or fee of any kind relating to any period on or prior to the Closing with respect to the Sellers, the Assets, the Landfills, or the ownership operation or management of the Business of the business of BroadAcre.

26.     The above-described First Amendment to the Purchase Agreement did not amend

Section 12.7.

**D.      Closing and Non-Payment of Taxes by Defendants.**

27.     The Parties closed the Transaction on August 31, 2007.  The Assets and Property

of U.S. Waste and BroadAcre were transferred as specified to Waste Connections, and Waste

Connections paid the required funds.

28.     At the time of Closing, as a result of the transactions contemplated by the

Purchase Agreement and actually occurred by the transaction coming to fruition, transfer taxes

were due to be paid to the state of Colorado and other governmental entities.

29.     The total amount of taxes due was $396,687,67.

30.     Contrary to the Purchase Agreement, Defendants failed to pay the transfer taxes

that were due.

31.     As a result, Waste Connections was forced to pay the transfer taxes themselves.

**E.**     **Demand For Payment.**

32.     After paying the required transfer taxes, Waste Connections sought

reimbursement from the Defendants.  Defendants did not repay Waste Connections as they were

contractually bound to do.

33.     Waste Connections continued to seek repayment of these monies in 2009 and

early 2010.

34.     To date, Defendants have not repaid Waste Connections the transfer tax monies

owed.

35.     Waste Connections is currently owed $396,687,67, plus interest.

## III.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Breach of Contract Against All Defendants Regarding Failure to Pay Transfer Taxes)**

36.     Waste Connections incorporates the foregoing paragraphs as if fully set forth

herein.

37.     Waste Connections, U.S. Waste, Dominick DiVello and Victor DiVello are all

parties to the August 7, 2007 Purchase Agreement whereby the Parties agreed that all sales and

transfer taxes arising out of the transactions contemplated by the Purchase Agreement would be

borne by the Sellers at closing.  The Sellers were U.S. Waste, Dominick DiVello and Victor

DiVello.

38.     U.S. Waste, Dominick DiVello and Victor DiVello have breached that Purchase

Agreement by, among other things, failing to pay the transfer taxes at closing, and failing to

repay Waste Connections who was forced to pay the transfer taxes on U.S. Waste, Dominick

DiVello and Victor DiVello's behalves.

6

39.     Waste Connections is entitled to specific performance of the Purchase Agreement such that U.S. Waste, Dominick DiVello and Victor DiVello shall repay Waste Connections the transfer taxes Waste Connection paid on their behalves.

40.     U.S. Waste, Dominick DiVello and Victor DiVello's breach has caused Waste Connections damages amounting to at least $396,687.67 plus interest.

41.     U.S. Waste, Dominick DiVello and Victor DiVello's breach has caused Waste Connections further damages to be proven at trial.

### SECOND CLAIM FOR RELIEF
### (Unjust Enrichment, in the alternative, against all Defendants)

42.     Waste Connections incorporates the foregoing paragraphs as if fully set forth herein.

43.     Waste Connections paid $396,687.67 in transfer taxes to governmental entities on behalf of U.S. Waste, Dominick DiVello and Victor DiVello.  U.S. Waste, Dominick DiVello and Victor DiVello were bound to pay these monies.

44.     U.S. Waste, Dominick DiVello and Victor DiVello were benefited by not having to pay this money at Waste Connections' direct expense.

45.     Under the circumstances here it would be unjust for U.S. Waste, Dominick DiVello and Victor DiVello to retain the benefit of not having to pay the $396,687.67 without commensurate compensation to Waste Connections.

46.     As such, Waste Connections has been damaged and requests judgment in an amount to be proved at trial, costs and interest at the statutory rate and such other and further relief as the Court deems just and proper.

## IV.   PRAYER FOR RELIEF

**WHEREFORE** Waste Connections requests that this Court enter judgment in its favor granting the following relief:

1.      Enter judgment in favor of Waste Connections and against Defendants in an amount of $396,687.67 including pre and post judgment interest;

2.      Enter judgment in favor of Waste Connections and against Defendants, jointly and severally, for pre-judgment interest, as provided by law;

3.      Enter judgment in favor of Waste Connections and against Defendants, jointly and severally, for its reasonable costs and attorneys' fees, as may be provided by statute or otherwise as provided by law; and

4.      Award such other and further relief as this Court deems just and proper.

## V.   JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Waste Connections of Colorado, Inc. hereby demands a trial by jury of all issues so triable.

Respectfully submitted this 18th day of June, 2010.

*s/* Evan M. Rothstein
Tucker K. Trautman
Evan M. Rothstein
DORSEY & WHITNEY LLP
370 17th Street, Suite 4700
Denver, CO 80202-5647
Telephone: (303) 629-3400
Facsimile:  (303) 629-3450
E-mail:  trautman.tucker@dorsey.com
E-mail:  rothstein.evan@dorsey.com
**Attorneys for Plaintiff**
**Waste Connections of Colorado, Inc.**

Plaintiff:
Waste Connections of Colorado, Inc.
2295 Iron Point Road, Suite 200
Folsom, California 95630.